UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10346

C.D., by and through her PARENTS
and NEXT FRIENDS, M.D. and P.D.,
and M.D. and P.D., for themselves

v.

NATICK PUBLIC SCHOOL DISTRICT

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

October 27, 2021

STEARNS, D.J.

Plaintiffs C.D., by and through her parents and next friends, M.D. and P.D., and M.D. and P.D. (collectively, Plaintiffs), bring this action against defendant Natick Public School District (Natick) to recover attorneys' fees and costs incurred in a proceeding before the Board of Special Education Appeals (BSEA). The court previously allowed in part and denied in part Plaintiffs' motion for summary judgment, concluding that Plaintiffs were entitled to some measure of fees and costs, but reserving any determination on the amount of a reasonable and proportionate award until Plaintiffs submitted documentation as to the rates charged by their attorneys and the

number of hours these attorneys billed. Plaintiffs have now supplemented the record with the requested documentation.

## DISCUSSION

"A reasonable fee typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). "In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).

Plaintiffs assert, and the court agrees, that the billing rates charged by Attorney Laurie Martucci are fair and reasonable and within the range customarily charged by other attorneys of comparable experience for similar claims. They concede, however, that some measure of reduction in the number of hours spent on the case is warranted to account for "redundant or excessive" work and their limited success on the merits of the claims. Pls.'

Mem. (Dkt # 26) at 5. In that vein, Plaintiffs only seek 30% of their total fees and costs.

Natick contends that a 70% reduction would still result in an excessive fee because Plaintiffs achieved limited relief related to only one of their claims. Natick calculates the fees attributable to Martucci's work for that single claim as $16,297.50. Alternatively, Natick argues that if the court cannot determine which billing entries are attributable to the prevailing claim, the court should deduct time that is excessive or improperly billed and then reduce the remainder by 95%.

After considering the relevant factors, the court concludes that neither party's proposal would result in a reasonable and proportionate award under the circumstances present here, and will instead impose an 85% reduction from its calculation of the total billed amount. Martucci billed well over a thousand hours over the course of five years. Even accepting that some of the costs for these hours were deferred on a contingency basis, the court cannot consider this figure to be anything but unreasonable given the explanations provided for much of the work performed. In 19-cv-12427, for example, although the case involved an appeal of a BSEA decision (*i.e.*, the issues had already been researched and argued), the billing records indicate

that Martucci spent more than 50 hours conducting legal research for and drafting the Complaint, *see* Ex. E-3 (Dkt # 19) at Invoice # 51, and more than 70 hours conducting legal research for and drafting Plaintiffs' motion for summary judgment, *see* Ex. E-2 (Dkt # 18) at Invoice # 62.  Further, as Natick points out, Martucci's invoices contain irregularities that make assessing their accuracy challenging, including billing 85 hours spent on preparing a closing argument in one day.  *See* Ex. E-3 (Dkt. #19) at Invoice # 45.  An 85% reduction renders the hours count for each of these (and comparable[1]) tasks significantly more plausible.

That Plaintiffs achieved only a moderate degree of success on their claims likewise weighs in favor of an 85% reduction.  Plaintiffs prevailed only with respect to one school year for one of the seven claims brought in this case, and their victory only came on procedural grounds and not on the merits of whether placement in the ACCESS program provided C.D. with a FAPE.  They thus did not accomplish the main goal of their litigation.

---

[1] Because the record is rife with comparable examples, *see, e.g.*, Ex. E-1 at Invoice # 70 (more than 50 hours researching and drafting motion for fees), the court will not list every instance of inefficiency.

The significance of Natick's procedural violation cannot, of course, be ignored. As noted in the court's prior Order, school districts must provide a formal IEP to students with disabilities each and every school year, and the failure to comply with this mandate in any given year warrants a remedy (if nothing else, to deter Natick and other schools from committing a similar violation in the future). However, the court recognizes that the violation appears to have been the result of inadvertence on Natick's part, not one involving any intentional wrongdoing, and that it did not cause C.D. any tangible educational harm.[2]

Finally, although counsel spent a significant amount of time and effort litigating Plaintiffs' claims (the propriety of a reduction in hours notwithstanding) and deferred roughly $40,000 of her fees on a contingent basis, the legal issue underlying the procedural claim was not "particularly novel" or "difficult." Pls.' Mem. (Dkt # 26) at 11. This claim, moreover, relied on a factual background distinct from that of the FAPE claims – the failure to provide any IEP for the 2015-2016 school year – meaning only a limited portion of the extensive discovery process can be attributed to it. In light of

---

[2] As the BSEA noted, the ACCESS program was available to C.D. at all points during the 2015-2016 school year, despite the lack of a formal IEP.

these (and other) circumstances, the court is convinced that an 85% reduction is appropriate.

Plaintiffs list their attorneys' fees variously as $378,583.09, Ex. 5 to Pls.' Suppl. (Dkt # 29-5) at 2, and $364,833.09,[3] Ex. 6 to Pls.' Suppl. (Dkt # 29-6) at 2; and their costs as $3,222.80, Ex. 5 to Pls.' Suppl. at 2, and $3,605.50,[4] Ex. 6 to Pls.' Suppl. at 2. Having reviewed the billing records, however, and subtracting the unsupported fees and costs,[5] the court calculates the correct sums to be $331,020.52 and $2,980.50, respectively. A 15% share of these figures equates to $49,653.08 in attorneys' fees and $447.08 in costs. The court accordingly will award Plaintiffs $50,100.16 as the total award.

## ORDER

For the foregoing reasons, Plaintiffs' supplemental motion for attorneys' fees is <u>ALLOWED</u>. Plaintiffs are awarded $50,100.16 in attorneys' fees and costs.

---

[3] The total of $232,119.44, $114,106.99, and $18,606.66.

[4] The total of $2,680.50, $400.00, and $525.00.

[5] Invoice # 18 from 2018 is entirely missing, and there are errors in the calculations associated with several other invoices, *e.g.*, Invoice # 27 from that same year.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE